OPINION OF THE COURT
Israel Rubin, J.
This is a motion by defendant for an order pursuant to CPLR 3212, granting summary judgment dismissing the complaint. Dismissal is sought upon the ground that article 13 of the by-laws of defendant, alleged to be binding upon plaintiffs, contains a hold harmless clause, whereby, as a condition to membership, “each member” agreed “to hold the Club [Windham. Mountain Club, Inc.] harmless from claims of any kind, nature or description (including claims resulting from the negligence of an officer, employee, governor or member of the Club), arising out of the use of any of the Club’s facilities by such member or his family.” Plaintiffs cross-move for partial summary judgment striking defendant’s third affirmative defense and counterclaim for indemnification as against plaintiff Wil *405 liam Blanc (William), predicated upon the covenant purporting to limit the liability of the Club.
The action arises out of an accident which occurred on March 6, 1977, when plaintiff Paulette Blanc (Paulette) sustained serious personal injuries while using the skiing facilities at the Windham Mountain Club (Club). The occurrence is alleged to have resulted from the negligence of an employee who had been attending the chairlift for the skiing facility.
William Blanc became a member of the Club in May of 1969, paying annual membership fees from that time until the accident. In 1970, he became a founding member, which allegedly carried with it a greater proprietary interest. As a family member, his wife Paulette and his daughter were entitled to avail themselves of the Club’s facilities.
In seeking summary dismissal, defendant claims that plaintiffs are precluded from suit by article 13 of the bylaws of the Club, adopted May 20, 1973, which provision remained in full force and effect until the time of the accident. The clause, argues defendant effectively bars the suit by Paulette or, in the alternative, requires that William indemnify and hold the Club harmless from any liability which may be imposed.
In opposition, and in support of their cross motion, plaintiffs claim: (1) Paulette was not a member of the Club and, accordingly, is in no way precluded by the by-law provision; (2) article 13 of the by-laws is void and unenforceable, contrary to the public policy of the State as expressed in section 5-326 of the General Obligations Law; and (3) the exculpatory clause, drawn in broad and sweeping language, lacks required clarity and specificity so as to render the limitation of liability unenforceable. Plaintiffs, who deny having seen the by-laws until after the suit was brought, argue further that they never agreed to the hold harmless clause and, accordingly, there was no agreement to exculpate defendant.
Moreover, it is asserted that, since William was a member since 1969, the by-laws, adopted four years later in 1973, cannot limit available rights or remedies, even were *406 they properly and validly enacted. In this respect, there is no proof to establish, as a matter of law, the authority under which the by-laws were adopted. This factual issue, standing alone, is sufficient to require denial of defendant’s motion to dismiss, particularly in view of the claim by William that, although he had requested a copy of the Club’s rules and regulations when he became a member, he had never seen article 13 until after commencement of the action. At that time, a general mailing to members advised that there was in effect a limitation of liability.
Contrary to defendant’s assertion, no proof has been shown sufficient to raise a triable issue that Paulette, who was not a member of the Club, was bound by the limitation in liability contained in the by-laws. Article 13 of the bylaws distinguishes between a “member” and others authorized to use the Club’s facilities, such as a member of the family. The by-law expressly provides that “each member covenants and agrees to hold the Club harmless from claims * * * arising out of the use of any of the Club’s facilities by such member or his family.” The provision does not purport to include a similar covenant or agreement by guests and family members.
Moreover, there is no suggestion that Paulette agreed to the terms of the exculpatory clause contained in the bylaws. There is no proof that the existence of the clause was ever made known to her before she availed herself of the use of the facilities at the Club. She was not a member, never having applied for nor having signed any application for membership. Instruments of release are to be strictly construed (Phibbs v Ray’s Chevrolet Corp., 45 AD2d 897). Since Paulette never sought to join the Club, she cannot be held to any covenant alleged to be incident to such membership (see Federal Ins. Co. v Walker, 53 NY2d 24, 33, rearg den 54 NY2d 717, 753; Bernstein v Seacliff Beach Club, 35 Misc 2d 153, 155).
A party on a motion for summary judgment must assemble affirmative proof to establish his entitlement to judgment as a matter of law (Zuckerman v City of New York, 49 NY2d 557). CPLR 3212 (subd [b]) directs that such motion be supported by affidavit of a party with requisite knowledge of the facts and by tender of admissible evidentiary *407 proof. The moving party must establish his case “clearly and completely” (Curry v Mackenzie, 239 NY 267, 269). Here, the papers submitted in support of the motion to dismiss and in opposition to the cross motion to strike the third affirmative defense are patently insufficient in failing to even allege that Paulette was aware of the provision in the by-laws and assented to the purported exculpation of liability. The affidavits of counsel, without requisite knowledge, are insufficient and lack probative value (Di Sabato v Soffes, 9 AD2d 297; Philip A. Feinberg, Inc. v Varig, 80 Misc 2d 305, affd 47 AD2d 1005).
Contrary to the suggestion by plaintiffs, however, the exculpatory clause at issue here is sufficiently clear and unambiguous as to include within its intended scope the injuries herein sustained by plaintiff. The recent decisions in this State have departed from a rigid adherence to Thompson-Starrett Co. v Otis Elevator Co. (271 NY 36), wherein the Court of Appeals held that such contracts would not be construed so as to absolve a party from the consequences of his own negligence, absent a clear and unequivocal intention specifically set forth in the agreement (see Levine v Shell Oil Co., 28 NY2d 205; Margolin v New York Life Ins. Co., 32 NY2d 149; Liff v Consolidated Edison Co., 23 NY2d 854, affg 29 AD2d 665). Instructive is the observation of the court in Levine (supra, at p 211): “we do question the judicial feasibility of a rule which allows a court to conclude that where a contract provides that indemnification will be for any and all liability, the parties must have meant something else.”
In Hogeland v Sibley, Lindsay & Curr Co. (42 NY2d 153), the court continued its adherence to the departure from the Thompson-Starrett doctrine, observing that the appropriate approach, at least in cases involving agreements negotiated at arm’s length, is to look to the unmistakable intention of the parties, to be gleaned from the language used by them and the underlying purpose of the agreement. Thus, the court there concluded that the indemnification clause contained in the lease, agreed to in an “arm’s length transaction”, did not constitute an exemption of liability by the lessor, but rather, served to allocate the risk of liability to third parties, primarily through the *408 device of insurance coverage (see, also, Randall v Board of Higher Educ., 78 AD2d 516).
The situation in the case at bar is clearly distinguishable from that which confronted the court in Hogeland (supra), Levine (supra) and Margolin (supra). Here, there is no claim that what transpired was but an arm’s length transaction between sophisticated businessmen. Neither does the by-law provision at issue here merely allocate the risk between the contracting parties through the employment of insurance. Rather, the central issue raised is the propriety of a clause by which one party seeks to wholly exonerate itself from the consequences of its own negligence, albeit couched in language suggesting an agreement by one party to hold the other harmless. Such a clause is certainly subject to close judicial scrutiny, with an exacting standard to be used to measure its validity (Van Dyke Prods, v Eastman Kodak Co., 12 NY2d 301, 304). Thus, the reported decisions have required that the intention to insulate a party from liability for his own negligence be clear and unequivocal, expressed in explicit and unmistakable language (Gross v Sweet, 49 NY2d 102,107; Van Dyke Prods, v Eastman Kodak Co., supra, at p 304; Ciofalo v Vic Tanney Gyms, 10 NY2d 294, 297; Boll v Sharp & Dohme, 281 App Div 568, 570-571, affd 307 NY 646).
The by-law provision here exempts the Club from liability for “claims of any kind, nature or description (including claims resulting from the negligence of an officer, employee, governor or member of the Club)”. Although there is no express reference to claims for personal or bodily injury, the inclusion of such is encompassed within the phrase “claims of any kind, nature or description”. The applicable law requires that an exculpatory clause be clear and coherent, expressed in understandable and unambiguous terms (Gross v Sweet, 49 NY2d, at pp 107-108, supra). The interpretation of such a clause, however, as the Court of Appeals there observed, does not require “resort to a magnifying glass and lexicon” (49 NY2d, at p 107). Where sufficient is shown to conclude that the parties agreed to indemnification of any claim or liability, including that resulting from negligence, the court may not find that the *409 parties actually meant otherwise, to exclude claims for personal injuries.
Nevertheless, I find, under the facts and circumstances of this case, that the exculpatory clause contained in defendant’s by-laws is unenforceable as against either plaintiff. The limitation of liability may not properly serve to bar the action by Paulette; nor may it afford to defendant a claim for indemnification as against its member, William. Insofar as relates to Paulette’s claim for personal injuries, as heretofore held, she was not a member of the Club and, accordingly, did not agree to indemnification. There is neither claim nor proof that she was even apprised of the existence of the provision whereby the Club purported to exculpate itself from liability. Thus, insufficient has been shown to raise a genuine triable issue of fact to preclude partial summary relief, striking as to Paulette, the third affirmative defense contained in the answer.
The defense is likewise insufficient as against William as against his derivative claim for loss of services, as is the counterclaim for indemnification. Although William, as a member, was bound by the Club’s rules and regulations, there is no proof whatsoever that members were duly and reasonably notified that, as a condition to membership, they agreed to indemnify the Club for any liability which might result from the use of the facilities at the Club. Assuming that the by-laws had been properly adopted, consistent with the certificate of incorporation, members must be afforded notice of such by-laws to which they were to be held accountable. Otherwise, a member would be improperly denied the opportunity of electing to remain within the Club, subject to the exculpatory provision, or to withdraw therefrom by refusing to remit membership dues for the ensuing fiscal year.
Dispositive here is the unrefuted claim by William that he had never received the by-laws and had no notice of the exculpatory clause therein contained until after institution of suit. The absence of proper notification is crucial, since the viability of the defense is dependent upon the consensual nature of the agreement to exonerate one from liability for one’s own negligence. The existence of a covenant or agreement to indemnify, under the facts of this case, can *410 only be established by proof that one in the position of William continued his membership with knowledge or information that there was a hold harmless agreement in the by-laws of the Club. Although, as defendant contends, the by-laws of the Club were binding upon the members, the Club was duty-bound to apprise its membership of the exculpatory clause therein contained.
Moreover, there is no proof on this motion to attest to the propriety of the adoption of the limitation in liability set forth in article 13 of the by-laws. The conclusory assertion by the president of the Club that the by-laws had been adopted on a particular date is insufficient for that purpose. Noticeable is the absence of any allegation that adoption occurred at a duly constituted meeting, after sufficient notice had been sent to the members. Such notice is essential to establish that the by-laws were properly enacted, consistent with the clear intendment of section 602 of the Not-For-Profit Corporation Law. In addition, article 15 of the by-laws directs that any amendment to article 13 be accomplished only “by the affirmative vote of a majority of the whole Proprietary membership.” Since the entire proprietary membership was needed to amend the by-law provision, a fortiori, the original enactment similarly required action by the membership at a duly constituted meeting and after timely notification as to the action to be taken.
Aside from the foregoing, article 13 of defendant’s bylaws, in that it purports to exempt the Club from liability for damages resulting from its own negligence, is void and unenforceable, in clear conflict with the public policy of the State, as expressed in section 5-326 of the General Obligations Law. The statute, which took effect September 1, 1976, provides as follows: “Every covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from *411 liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable.”
Clearly, defendant Club is a “place of * * * recreation, or similar establishment” within the scope of the legislative pronouncement. The corporate purposes of the Club, as expressed in its certificate of incorporation, include, inter alia, “to conduct, operate, and maintain a ski area for its members * * * to provide instruction for its members in skiing and other sports and recreational activities; to * * * maintain other athletic and recreational facilities on the Club premises”. The statute, which sets forth the public policy of the State to invalidate exculpatory clauses like that at issue here, rendered such clause void and unenforceable during the period subsequent to the effective date of the legislation.
Wholly without merit is the claim offered in opposition that, to hold the statutory provision applicable to the facts of this case would improperly impinge upon vested contractual rights. To the contrary, the disposition here reached does not give retroactive effect to the legislative proscription; nor does this decision render invalid a covenant which may have been valid and enforceable when made.
The indemnification clause here is contained within the by-laws of the Club. As acknowledged by defendant, the inclusion therein of necessity carried with it the assent by the member to the terms of the exculpatory clause as one of the conditions of membership, each year, when each member remitted membership dues for the next ensuing year. This, of course, is dependent upon due notice to the members that such clause existed. The action of the Legislature, however, in declaring such a clause to be contrary to the public policy of the State, effectively precluded the Club from further reliance upon the indemnification clause contained in the by-law's. As to future years, the statute rendered article 13 of defendant’s by-laws “void as against public policy and wholly unenforceable.”
Equally without merit is the assertion by the Club that, since it is a private, not-for-profit corporation, it is not *412 subject to section 5-326 of the General Obligations Law. Defendant claims that the statute applies only as against public facilities. To the contrary, albeit the captioned heading to the legislation has reference, inter alia, to “places of public amusement or recreation” (emphasis added), the text of the statute deletes any reference to “public”.
Moreover, the legislative intent, gleaned from the language of the statute and from the underlying remedial purpose to which the legislation was addressed, compels the disposition herein that its terms be held applicable to defendant’s facilities. The clear purpose of the enactment was to invalidate exculpatory clauses with respect to the use by the public of recreational, amusement and other similar establishments, which had theretofore been hidden in admission tickets, membership applications and other similar writings. By such clauses, the owner or operator sought to exonerate itself from liability for its own negligence Which may have caused or resulted in injury to unsuspecting users of the facility. Whether the exculpation of liability be hidden in barely legible print on the reverse side of an admission ticket, or buried in some unnoticeable portion of a membership application, or, as here, concealed within separate, unpublished by-laws of the establishment, the end result is to conceal from consumers that the owner or operator sought to absolve itself from liability. The legislation, however, in recognition of the strong public interest that such owners and operators be held accountable, has declared such exculpatory clauses to be void and unenforceable as against public policy.
The statutory provision is applicable to a private recreational establishment such as defendant, open to the public in the sense that the public could join upon submission of a membership application and payment of appropriate fees. Contrary to the suggestion offered by defendant, the statute does not apply solely with respect to those establishments open daily to the general public, upon payment of an admission fee. Had the Legislature intended to so restrict the scope of the statute, it would have so provided. It is patently clear, however, that the legislation was to be likewise applicable to private clubs to which the public gained admission by applying for membership therein. *413 Otherwise, the Legislature would not have included within the broad proscription contained in section 5-326 of the General Obligations Law, provision to invalidate exculpatory clauses contained in “any contract, membership application, ticket of admission or similar writing”.
Aside from the foregoing, although not dispositive in light of the within interpretation of the statutory provision, plaintiffs contend that the Club was in fact open to the general public, with advertisements directed to the public appearing in the New York Times. Defendant has offered no affidavit by a person with requisite knowledge of the facts to refute William’s claim that the facilities were in fact open to the public. The affidavit of counsel is insufficient for this purpose. Thus, other than conclusory assertions by defendant that it does not come within the intended scope of the statute, the Club has offered no evidentiary proof to raise a triable issue as to the nature of its facilities. Accordingly, plaintiffs’ uncontroverted factual assertions establish that defendant, at the time of the accident, was a “place of * * * recreation” within the plain meaning of the statute (see Wurzer v Seneca Sport Parachute Club, 66 AD2d 1002, 1003).
The disposition by the Court of Appeals in Gross v Sweet (49 NY2d 102, supra) is not to the contrary. There, the accident occurred while plaintiff was engaged in a parachute jumping course, as a prerequisite for which plaintiff paid a fee and signed a release form exculpating defendant owner from any liability. Insofar as concerns section 5-326 of the General Obligations Law, all that the court there observed was that defendant’s occupation did not fall within the protection of the statute. The situation in Gross (supra), concerning instruction and training in a parachute jumping course, is clearly not analagous to that involved in this case, where defendant furnished and managed a recreational and athletic establishment to offer to its members, their family and guests, facilities for skiing and other social and athletic pursuits. Upon the undisputed proof offered, I find such activity within the intended scope of the statute and, therefore, conclude that the Club was a “place of * * * recreation, or similar establishment” (General Obligations Law, § 5-326). Thus, the statute forecloses *414 defendant from reliance upon the exculpatory clause contained in its by-laws, either as a defense to the action, or, affirmatively, by claim for indemnification from its member, William Blanc.
Accordingly, defendant’s motion for summary judgment dismissing the complaint is denied. The cross motion by plaintiffs for partial summary relief striking the third affirmative defense and the counterclaim for indemnification as against plaintiff William Blanc is granted.