SEQUA CORPORATION And Sequa Capital Corporation, Plaintiffs,

v.

Jeffrey J. GELMIN, GBJ Corporation and Topaz Capital Corporation, Defendants.

No. 91 Civ. 8675 (CSH).

United States District Court, S.D. New York.

March 18, 1994.

Thomas A. Butler, Butler, Fitzgerald & Potter, New York City, for GBJ Corp.

David M. Brodsky, Schulte Roth & Zabel, New York City for Sequa Corp., Sequa Capital Corp. and BT Securities Corp. New York.

Jack H. Weiner, New York City, for BT Securities Corp. New York, defendant.

David Golub, Silver Golub & Teitell, Stamford, CT, for David J. O'Brien.

David J. O'Brien, pro se.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs Sequa Corporation ("Sequa") and Sequa Capital Corporation ("SCC") seek, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Ninth Counterclaim of defendant GBJ Corporation ("GBJ") and all counterclaims asserted by defendants Jeffrey J. Gelmin ("Gelmin") and Topaz Capital Corporation ("Topaz"). In addition, pursuant to Rule 12(f), plaintiffs move to strike the Fifth and Ninth Affirmative Defenses of defendants GBJ, Gelmin, and Topaz.

### BACKGROUND

The history of this litigation was set forth previously in an opinion reported *sub nom. GBJ Corp. v. Sequa Corp.*, 804 F.Supp. 564 (S.D.N.Y.1992), familiarity with which is assumed. Subsequently, Sequa's and SCC's counterclaim and third-party complaint was recast as the "Complaint" with Sequa and SCC denominated as "Plaintiffs" and with GBJ, Gelmin, and Topaz denominated as "Defendants."

In this motion, the Court addresses whether the defendants have sufficiently alleged a right to indemnification under the various agreements entered into with SCC. In July 1985, SCC and GBJ entered into a Consulting Agreement whereby GBJ and Gelmin agreed to perform services for SCC relating to the capital equipment leasing business. SCC subsequently entered into an Indemnity Agreement and Undertaking with GBJ and Gelmin[1] ("Indemnity Agreement" dated December 1, 1989). Pursuant to this agree-

---

1. At the time this agreement was entered into, Gelmin was the President and sole shareholder of GBJ. The Complaint alleges that Gelmin controlled all operations of GBJ and, as such, that GBJ is the alter ego of Gelmin.

ment, SCC indemnified GBJ and Gelmin against "claims"[2] of any kind and nature, including reasonable legal fees and expenses that might be incurred in defending against suits imposed on, incurred by, or asserted against GBJ or Gelmin due to the performance of their duties under the Consulting Agreement. Indemnity Agreement ¶ 2(a). Excluded from the Indemnity Agreement are claims which are the result of GBJ's or Gelmin's gross negligence or willful misconduct. Indemnity Agreement ¶ 2(a). Defendant Gelmin also claims a right to indemnification under a separate agreement dated August 8, 1989 ("Gelmin Agreement"). This agreement indemnifies Gelmin for "liabilities, losses, damages, costs and expenses" specifically arising out of or in connection with his service as an officer or director of an SCC affiliate. Gelmin Agreement ¶ 1.

Defendant Topaz seeks indemnification under the Indemnity Agreement as well. Pursuant to an Assignment and Agreement dated March 7, 1991 ("Assignment and Agreement"), Topaz and GBJ assigned to SCC all of their rights, title, and interest in certain Cal Pacific agreements dated January 14, 1991. In return, SCC agreed to provide coverage to Topaz, GBJ, and Gelmin under the Indemnity Agreement. Assignment and Agreement ¶ 6.

Defendants allege, without more, that if they are held liable to Sequa or SCC on any claims asserted in this action (except for those claims based on willful misconduct), SCC must indemnify defendants and reimburse their reasonable legal expenses pursuant to the above-mentioned indemnification agreements. Answer ¶¶ 109–121. In an attempt to further bolster their position that the indemnification agreements cover claims between the parties, defendants have submitted the Affidavit of Jeffrey Gelmin ("Gelmin Affidavit"). On this motion, the Court must decide whether the various indemnification agreements cover defendants' RICO-related expenses and, more generally, whether the agreements apply to claims asserted between the parties to those agreements.

## DISCUSSION

### I. Indemnification of RICO Liability and Defense–Related Expenses

■ It is well-established, and defendants do not argue otherwise, that indemnification is not available for RICO liability. *Friedman v. Hartman*, 787 F.Supp. 411, 418 (S.D.N.Y.1992); *Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.*, 1992 WL 73473, at *6 (S.D.N.Y. Apr. 1, 1992); *Department of Economic Dev. v. Arthur Andersen & Co.*, 747 F.Supp. 922, 931–32 (S.D.N.Y. 1990); *Minepeco, S.A. v. Conticommodity Serv., Inc.*, 677 F.Supp. 151, 154 (S.D.N.Y. 1988). Indemnification is unavailable for RICO liability because it would be contrary to public policy for a court to allow an intentional tortfeasor to escape liability. In this action, plaintiffs base their RICO allegations on the willful misconduct of mail and wire fraud. Defendants contend, however, that they are entitled to indemnification of their RICO defense-related expenses in the event that they are successful in defending against plaintiffs' RICO claims.

Courts in the Second Circuit generally have not drawn a distinction, as defendants have, between indemnification for RICO liability and indemnification for defense-related expenses in a RICO action.[3] *See generally, Friedman*, 787 F.Supp. at 418 (indemnification rights are unavailable in a RICO action). A distinction may be recognized, however, where there is a clear contractual right to such indemnification. *Paddington Partners v. Bouchard*, 1992 WL 232083, 1992 U.S. Dist. LEXIS 13076 (S.D.N.Y. Sept. 1, 1992), *adopting Magistrate's Report and Recom-*

---

**2.** The term claims includes "any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, expenses and disbursements." Indemnity Agreement ¶ 2(a).

**3.** The Court does not read the holding in *Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.*, 1992 WL 73473, at *6–7, 1992 U.S. Dist. LEXIS 3953, at *15–18 (S.D.N.Y. Apr. 1, 1992) to

mean that defendants may recover their expenses if they successfully defend the RICO claim. Rather, it appears that the court in *Academic Industries* dismissed the entire claim seeking indemnity for RICO liability and defense-related expenses and allowed defendants to seek only contribution on the securities fraud claims brought in that action.

*mendation,* 1991 WL 537022, 1991 U.S.Dist. LEXIS 20769 (S.D.N.Y. Dec. 11, 1991).

Following the dismissal of plaintiff's RICO claims in *Paddington Partners,* defendant Jeffries & Co. recovered RICO defense-related expenses pursuant to a contract of indemnification with co-defendant Econocom. The court determined that the most rational reading of Jeffries' contract of indemnification—which provided for interim payment of litigation expenses by Econocom—was that Jeffries is entitled to an advance of such expenses subject to recoupment if Jeffries ultimately is found guilty. *Id.* 1991 WL 537022 at *14–15, 1991 U.S.Dist. LEXIS 20769 at * 37–38. In interpreting the contract at issue in *Paddington,* the court drew an analogy to § 725 of the New York Business Corporation Law. Pursuant to § 725, and § 723(c) which is incorporated by reference, an indemnitor is entitled to recoupment of any expenses advanced to its officers and directors in the event that such individuals are found not entitled to indemnification. In a RICO context, this means that unless such officers and directors are found liable under RICO, they are entitled to indemnification pursuant to the terms of their contract. The *Paddington* court determined that Econocom and Jeffries intended to accomplish the same result as BCL § 726 in their indemnification agreement. Counsel for Econocom, in fact, conceded that under the contract Jeffries was entitled to indemnification if all claims against Jeffries were dismissed. *Id.* 1991 WL 537022 at *14, 1991 U.S.Dist. LEXIS 20769 at *36.

■ The *Paddington* court's analysis affects this Court's interpretation of the Gelmin Agreement most directly. That agreement expressly indicates an intent to mirror the indemnification rights provided in BCL §§ 721 to 726. Defendant Gelmin, thus, would be entitled to indemnification of RICO defense-related expenses if he is successful in defending against plaintiff's RICO claims and if the RICO claims were asserted against

him in his capacity as an officer or director of an SCC affiliate. As discussed in Part II of this opinion, however, plaintiffs' claims were not asserted against Gelmin as an officer or director of any SCC affiliate.

The Indemnity Agreement at issue in this action is distinguishable from the agreement in *Paddington Partners.* There is no express language that ties defendants' rights under the Indemnity Agreement into the rights provided by BCL §§ 721 to 726. Moreover, unlike the agreements in *Paddington,* it does not provide for interim payment of expenses to the defendants during the pendency of a case. The Indemnity Agreement, therefore, should not be read to infer that the parties intended to achieve the result that *Paddington Partners* indicates BCL § 726 intended.[4]

■ The Court's inquiry with respect to the Indemnity Agreement does not end there, however, for *Paddington Partners* does establish that parties may contract to provide for indemnification of litigation expenses in the event that a party successfully defends allegations of intentional misconduct. To determine whether the parties so intended, in New York,[5] a court must ascertain whether the contractual provisions "unmistakably provide" for indemnification in that situation. *Bourne Co. v. MPL Communications, Inc.,* 751 F.Supp. 55, 57 (S.D.N.Y.1990) (entitlement to contractual indemnification exists only if the terms of the contract unmistakably provide for such indemnification); *Heimbach v. Metropolitan Transp. Auth.,* 75 N.Y.2d 387, 553 N.Y.S.2d 653, 657, 553 N.E.2d 242, 246 (1990) (same); *Hooper Assoc. Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 549 N.Y.S.2d 365, 367, 548 N.E.2d 903, 904–05 (1989) (same). Here, the language of the indemnification contracts expressly excludes indemnification for claims imposed on, incurred by, or asserted against defendants "as a result of" their willful misconduct. Indemnity Agreement ¶ 2(a). If defendants

---

4. Even if interim payments were contractually provided for by indemnity agreements at issue here, it appears that a state's officer and director indemnification statute is of uncertain usefulness in interpreting a contract which provides indemnification to non-officers.

5. As contractually provided by the indemnification agreements, New York law governs the Court's determination of the issues raised on this motion.

GBJ, Gelmin, and Topaz successfully defend this suit, then the claims—litigation expenses—incurred by defendants could not have been a "result" of defendants' willful misconduct. It appears clear, therefore, that the Indemnity Agreement provides for reimbursement of litigation expenses in suits where defendants GBJ, Gelmin, and Topaz have been found not to have engaged in willful misconduct.[6] With respect to this particular action, however, defendants are entitled to indemnification of such expenses only if the Indemnity Agreement contemplates indemnification where SCC and defendants are suing each other, a question to which I now turn.

## II. Indemnification of Claims Asserted Between Parties to an Indemnification Agreement

 The Indemnity Agreement here provides coverage for claims "of any kind and nature." The question is whether claims asserted by the indemnitor SCC and its parent Sequa unmistakably are included within this broad language or whether the parties intended only to cover claims asserted by strangers ("third parties") to the agreement. The determination of this issue turns on the purpose of the indemnification agreement as unmistakably evidenced by the language of the agreement and the surrounding facts and circumstances. *Hooper,* 549 N.Y.S.2d at 367, 548 N.E.2d at 904–05; *Breed, Abbott & Morgan v. Hulko,* 139 A.D.2d 71, 531 N.Y.S.2d 240, 242 (1988), *aff'd,* 74 N.Y.2d 686, 543 N.Y.S.2d 373, 541 N.E.2d 402 (1989).

In *Hooper Assoc.,* plaintiff Hooper sought indemnification from defendant AGS for legal fees associated with plaintiff's claims against AGS. The indemnification clause at issue, similar to the Indemnity Agreement here, obligated AGS to indemnify and hold harmless Hooper from " 'any and all claims'," 549 N.Y.S.2d at 365 n. 1, 548 N.E.2d at 903 n. 1, including reasonable attorneys fees, arising in connection with the performance of certain services. Analyzing the language of the contract, the court held that the agreement did not unmistakably provide for the indemnification of claims between the parties to the agreement. The language, said the court, was "typical of those [agreements] which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim." *Id.* at 367, 548 N.E.2d at 904–05 (claims arising out of performance of services were susceptible to third-party claims; no such claims were exclusively or unequivocally referable to claims between the parties themselves). Moreover, other provisions of the agreement having no logical application to a suit between the parties to the agreement, unmistakably related to claims by third-parties. *Id.* (pointing to provisions which require plaintiff to promptly notify defendant of any claim or litigation and which give defendant an option to assume the defense of such claims). *See also Bourne,* 751 F.Supp. at 57–58 (agreement to indemnify did not expressly mention indemnification for suits between the parties and claims covered by the agreement are not exclusively or unequivocally claims between the parties themselves; therefore, parties' intention to provide for such indemnification was not unmistakably clear). *Cf. Breed, Abbott & Morgan,* 74 N.Y.2d 686, 543 N.Y.S.2d 373, 374, 541 N.E.2d 402, 403 (1989) (parties' manifest intent expressed in escrow agreement allowed escrowee to recover attorney's fees incurred in successful defense of claim of improper conduct by depositor of funds placed in escrow), *aff'g,* 139 A.D.2d 71, 531 N.Y.S.2d 240, 242 (1988).

The Indemnity Agreement here does not expressly provide for indemnification of claims asserted between the parties to that agreement. Rather, the agreement's broad language—"any and all" claims "of any kind and nature"—refers solely to the type of claims that are covered, not the identification of parties who may assert those claims. *Hooper* and *Bourne* require courts to consider the identity of the person or entity that may assert the types of claims covered by the agreement. If the claims covered refer "exclusively" or "unequivocally" to claims between the parties, a Court may interpret an

---

**6.** A different result would arguably be required if the indemnification contracts excluded claims "based" on defendants' willful misconduct.

indemnification agreement to include such claims. If not, then a court must find the agreement to be lacking evidence of the required intent. *See, e.g., Bourne,* 751 F.Supp. at 57–58.

█ In determining this issue, the Court must consider, on a motion to dismiss pursuant to Rule 12(b)(6), solely the facts alleged on the face of the pleadings and any documents attached thereto or incorporated by reference. *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989); *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985); *Wood v. Brosse U.S.A., Inc.,* 788 F.Supp. 772, 775 (S.D.N.Y. 1992). The Court is unable, therefore, to consider the Affidavit of Jeffrey Gelmin in assessing whether the terms of the indemnification agreements unmistakably cover claims asserted between the parties.

As stated previously, the language of the Indemnity Agreement does not expressly provide for indemnification of claims asserted between the parties to that agreement. Although the agreement reveals that its purpose was to induce GBJ and Gelmin to continue performing services under the Consulting Agreement (from which SCC admittedly derived substantial benefits), such language does not evince a clear or unequivocal intent to cover claims by SCC against GBJ and Gelmin. Moreover, as in *Hooper* and *Bourne,* certain provisions in the Indemnity Agreement unmistakably relate to third-party claims. Paragraph 2(c) of the Indemnity Agreement, for example, sets forth notification procedures by which GBJ and Gelmin are to notify SCC of "actions" by third parties. That section further grants SCC the option of assuming the defense of any such action. On its face, this type of a provision has no logical application to a suit by SCC against defendants.[7] *See also, Hooper,* 549 N.Y.S.2d at 367, 548 N.E.2d at 904–05. Likewise, section 5(j) of the Indemnity Agreement, which provides that SCC shall be subrogated to the rights of GBJ and Gelmin whenever SCC pays any amount pursuant to

the Agreement, has no application to claims asserted by SCC against defendants. This Court, therefore, finds defendants' conclusory allegations, that the Indemnity Agreement covers claims asserted by SCC, to be insufficient to withstand a 12(b)(6) motion to dismiss.

Defendants make one further effort to salvage their claims for indemnification by asserting that Sequa—the parent of SCC and a plaintiff in this action—is a third party to the Indemnity Agreement. Defendants' Brief at 26–28. By its terms, the agreement was "delivered by SCC for the benefit of GBJ and Gelmin" and no other person was to "have any rights, benefits, or privileges under [the agreement]." Indemnity Agreement ¶ 1. Defendants would have the Court read that provision as unmistakably revealing an intent for SCC to indemnify defendants when an SCC-related entity brings a claim against defendants. The effect of such an interpretation, however, would be to convert the agreement into a release—if Sequa sued defendants and prevailed, defendants could seek indemnification from Sequa's subsidiary for any resulting liability and expenses. Such an intent is not unmistakably clear. *Cf. Layman v. Combs,* 981 F.2d 1093 (9th Cir. 1992) (refusing to interpret indemnification clause by its literal terms because doing so would essentially give plaintiffs a "meaningless right to sue"). Defendant GBJ's Ninth Counterclaim and the counterclaims of defendants Gelmin and Topaz, to the extent that they are predicated solely on the Indemnity Agreement, are dismissed.

To the extent that defendants GBJ, Gelmin, or Topaz seek indemnification under the Topaz Assignment and Agreement, their counterclaims are dismissed as well. First, the Topaz Assignment incorporates the Indemnity Agreement by reference. Assignment and Agreement ¶ 6. Second, any indemnification under the Topaz Assignment is limited to claims based on certain Cal Pacific

---

7. Defendants contend that since ¶ 2(c)'s notice provision applies only to actions by third-parties, ¶ 2(a) should be read as unmistakably applying to actions brought by some broader group of persons or entities, *i.e.* actions commenced by SCC, as well. Defendants' argument is unpersuasive.

Given that an "action" is a type of "claim" covered by the Indemnity Agreement, *see* Indemnity Agreement ¶ 2(a), this Court does not find ¶¶ 2(a) and 2(c) as unmistakably demonstrating an intent to cover claims brought by SCC against defendants.

transactions occurring on January 14, 1991, including the making of a loan to Cal Pacific as evidenced by the issuance of Cal Pacific's promissory note to Topaz, which are not the subject of claims asserted by plaintiffs. Paragraphs 19, 37, 57(h), and 59(b)(i) of the Complaint refer to defendants' conduct on November 15, 1990 in making a different loan to Cal Pacific, not the January 14, 1991 loan. *See* Complaint ¶ 62(a). *See also* Plaintiffs' Brief at 22 (containing plaintiffs' admission that they are not asserting claims based on transactions occurring on January 14, 1991); Plaintiffs' Brief in Further Support at 22–23 (reiterating plaintiffs' earlier admission and noting that ¶ 62(a) of the Complaint does not seek to hold defendants liable for any activities occurring on January 14, 1991).

Defendant Gelmin's claim for indemnification under the Gelmin Agreement must also be dismissed. As discussed in Part I, the Gelmin Agreement expresses an intention to provide the same protections as BLC §§ 721 to 726. Defendants correctly note that the BLC § 722(c) contemplates indemnification of claims asserted by the indemnifying corporation. Defendants' Brief at 24. Defendants are incorrect, however, in asserting that the scope of the Gelmin Agreement is co-extensive with the scope of the BCL. The scope of the Gelmin Agreement is limited to "the terms and subject to the conditions [t]hereof...." Gelmin Affidavit ¶ 1. By its terms, the agreement covers only liabilities arising out of or in connection with Gelmin's service as an officer or director of an SCC affiliate.[8] Plaintiffs, however, are not suing Gelmin in that capacity. Instead, they are suing him in his capacity as a consultant to and de facto officer of SCC. *See, e.g.,* Complaint ¶ 14.

■ Since defendants have failed adequately to plead that SCC indemnified them for the claims asserted in this action, defendants' Fifth and Ninth Affirmative Defenses are insufficient as well. First, as discussed previously, plaintiffs' claims are outside the scope of the Gelmin Agreement and the To-

paz Assignment and Agreement. *See Federal Ins. Co. v. Walker,* 53 N.Y.2d 24, 439 N.Y.S.2d 888, 891, 422 N.E.2d 548, 550–51 (1981) (establishing that where the scope of an indemnity agreement does not encompass the claim asserted, it cannot be the basis of an affirmative defense to such a claim). Second, with respect to the Indemnity Agreement, not only does the agreement not pertain to claims asserted by SCC or SCC-related entities, but also nothing in the language suggests that SCC intended to waive its right to assert claims against defendants. *See Hadden v. Consolidated Edison Co.,* 45 N.Y.2d 466, 410 N.Y.S.2d 274, 275–76, 382 N.E.2d 1136, 1137–38 (1978) (waiver exists only where there is a knowing and intentional relinquishment of a known right).

## CONCLUSION

Based on the foregoing, the Ninth Counterclaim of GBJ and all counterclaims of defendants Gelmin and Topaz must be dismissed. In addition, the Fifth and Ninth Affirmative Defenses asserted by defendants GBJ, Gelmin, and Topaz must be stricken.[9]

It is SO ORDERED.

---

**8.** The agreement defines "affiliate" to include any present or future subsidiary, joint venture, or affiliated company of SCC.

**9.** GBJ asserts in its brief that if I decline to consider the Gelmin affidavit on this motion (and

I do so decline, *see* p. 10, *supra* ), it will amend its complaint. A motion to do so would lie under Rule 15, and would be denied if the amendment was futile under governing law. As to that issue, I express no present opinion.