BREED, ABBOTT & MORGAN, Appellant, v R. LEE HULKO, Respondent.

First Department, July 7, 1988

## APPEARANCES OF COUNSEL

*Eric M. Nelson* of counsel *(Nancy A. Brownstein* with him on the brief; *Breed, Abbott & Morgan),* appellant *pro se.*

*William J. Thomashower* of counsel *(Kaplan, Thomashower & Landau,* attorneys), for respondent.

## OPINION OF THE COURT

SANDLER, J.

The complaint, whose allegations are necessarily accepted as true on this appeal from an order granting defendant's motion pursuant to CPLR 3211 (a) (7) to dismiss for legal insufficiency, alleges that defendant R. Lee Hulko (Hulko) entered into a contract for the purchase of certain real property. Paragraph 39 of the contract designated plaintiff, Breed, Abbott & Morgan (Breed, Abbott) as escrowee of Hulko's $82,500 down payment and provided, *inter alia,* that the down payment was to be delivered to the sellers in the event of a default by Hulko.

The contract contained the following provision, central to the issue on this appeal, relating to Breed, Abbott's liability and its right to indemnification as escrowee: "The escrowee shall not be liable to either of the parties for any act or omission except for bad faith or gross negligence, and the parties hereby indemnify the escrowee and hold the escrowee harmless from any claims, damages, losses or expenses arising in connection herewith."

The complaint alleges that Hulko defaulted by failing to appear at the scheduled closing, and that, in accordance with the terms of the contract, Breed, Abbott delivered Hulko's down payment to the sellers. Thereafter Hulko sued Breed, Abbott in the Supreme Court, New York County, claiming that Breed, Abbott's release to the sellers of his escrow down payment was wrongful. The trial of the action resulted in a judgment in favor of Breed, Abbott dismissing Hulko's complaint. That judgment was based, in pertinent part, on a determination that Hulko had defaulted under the contract by failing to appear at the scheduled closing, and that Breed, Abbott had acted neither in bad faith nor with gross negligence in releasing the escrow funds.

In this action, Breed, Abbott seeks to recover the expenses it incurred in connection with the defense of Hulko's claim. Since Breed, Abbott received costs and disbursements in connection with the judgment entered in its favor, it is clear that the expenses here sought to be recovered are the legal expenses it incurred in defending against Hulko's action.

In the order appealed from, the I.A.S. court granted Hulko's

motion pursuant to CPLR 3211 (a) (7) to dismiss for failure to state a cause of action. The court concluded that the plaintiff could not recover its legal expenses under the indemnification clause because the clause did not explicitly state that counsel fees were included. We disagree, and accordingly would reverse the order appealed from and deny defendant's motion to dismiss.

The general rule is of course well established that the successful party in a lawsuit may not recover attorney's fees from the losing party unless such an award is authorized "by agreement between the parties or by statute or court rule". *(Matter of A.G. Ship Maintenance Corp. v Lezak,* 69 NY2d 1, 5; *see also, City of Buffalo v Clement Co.,* 28 NY2d 241, 262-263; *Mighty Midgets v Centennial Ins. Co.,* 47 NY2d 12, 21-22.)

The question presented is whether in the indemnification provision quoted above Hulko agreed to indemnify Breed, Abbott for the legal expenses it incurred under the circumstances that occurred. Applying the normal rules of construction of a contract, it would appear indisputably clear that the broad provisions of the indemnification agreement included the right of Breed, Abbott to recover the legal expenses incurred in defending a lawsuit by one of the parties to the contract that resulted in a determination that Breed, Abbott had acted appropriately in accordance with its contractual responsibilities.

The critical language appears in a single sentence, which has two separate parts, each linked to the other, and clearly intended to be read together. In the first part of the sentence, the parties agreed that the escrowee shall not be liable to either for an act or omission except for bad faith or gross negligence. Having carefully defined the circumstances under which the escrowee could be liable to the parties, the clause went on to state that "the parties hereby indemnify the escrowee and hold the escrowee harmless from any claims, damages, losses or expenses arising in connection herewith." If this broadly phrased agreement to indemnify did not include legal expenses incurred in defending against an action by one of the parties alleging misconduct by the escrowee which resulted in a determination in favor of the escrowee, it is difficult, if not impossible, to ascertain for what it was that the parties had agreed to indemnify the escrowee.

In an able brief, defendant did not even begin to suggest a plausible alternative meaning, nor does the dissenting opin-

ion. Since the relevant clause was addressed to defining the limited circumstances under which the escrowee would be liable to the parties, it is manifestly untenable to construe the agreement to indemnify as addressed exclusively to actions against the escrowee by third parties. Indeed, it may be open to question, although we need not decide the question, whether the agreement to indemnify embraced actions by third parties since such actions were explicitly addressed in a separate part of the agreement and the clause appears to be addressed to the relationship between the parties and the escrowee.

Ultimately the defendant's position rests on the thesis that the normal rules of contract construction are here inapplicable, and that, no matter how clear the meaning of the clause, broad indemnification clauses are to be construed as embracing litigation expenses only where such a term is specifically used. We have been unable to find any support whatever in the decided cases for this view, nor does there appear to be any principled reason for excepting or excluding a clause of this kind from the normal rules of contractual construction. Indeed, the controlling rule of law is unmistakably to the contrary, as was clearly pointed out some years ago by one of this country's most distinguished Judges in words that are as valid today as when they were first written. In *Artvale, Inc. v Rugby Fabrics Corp.* (363 F2d 1002, 1008 [2d Cir 1966]), Judge Friendly said, "[w]e find nothing in the New York decisions to indicate that if a contract ought fairly to be construed as covering such reimbursement [reimbursement for counsel fees], the provision would not be given effect."

Consistent with this statement of New York law, there is a long, uninterrupted line of decisions which have interpreted broadly worded indemnification clauses as embracing the right to reimbursement for counsel fees. *(See, Tyng v American Sur. Co.,* 174 NY 166; *Johnson v General Mut. Ins. Co.,* 24 NY2d 42; *Owens v Palm Tree Nursing Home,* 89 AD2d 619; *Lavorato v Bethlehem Steel Corp.,* 91 AD2d 1184; *Matter of Campbell,* 176 Misc 543; *Colon v Automatic Retailers Assn. Serv.,* 74 Misc 2d 478; *Zissu v Bear, Stearns & Co.,* 627 F Supp 687, *affd* 805 F2d 75, 79, 80 [2d Cir 1986].)

Confronted with this overwhelming body of authority, defendant argues that the rule promulgated in them applies only where the indemnification clause relates to actions by third parties *(but see, Tyng v American Sur. Co., supra; Zissu v Bear, Stearns & Co., supra),* and that somehow a different rule

applies where the promise to indemnify is sought to be applied to recover legal expenses incurred in defending against an action brought by the promisor itself. No plausible reason for such a distinction has been presented. Indeed, it is a curious notion that a broad indemnification clause will be interpreted to embrace counsel fees, though that term is not specified, where the action is brought by third parties, but will not be so interpreted where the action is brought by the promisor. One would have thought the latter situation, the one presented here, an even stronger one for construing the agreement in accordance with its obvious meaning.

In support of the dubious distinction he urges, defendant has cited two Trial Term decisions, *Robbins v Melbrook Realty Co.* (28 Misc 2d 1076 [Sup Ct 1961]) and *Gorman v Kings Mercantile Co.* (36 Misc 2d 38 [Sup Ct 1962]). Analysis of these decisions immediately discloses that the first decided of the cases relied upon by defendant *(Robbins v Melbrook Realty Co., supra)*, which was in turn relied upon by the later decided case, provides no support whatever for defendant's position, and in fact is quite consistent with the long line of authority referred to above. *Robbins* involved an action against a bonding company and its principal on a performance bond, which indeed contained broad language comparable to that presented in this case. In concluding that the bond did not permit recovery of counsel fees, the court relied on out-of-State cases involving actions on performance bonds, which opinions significantly noted that such bonds take the form of an ordinary suretyship as opposed to one of indemnity. On the basis of that distinction, the court decisions relied upon in *Robbins* concluded that since the surety's principal had assumed no obligation to reimburse for counsel fees, the surety's liability could be no greater. In the second case relied on by defendant *(Gorman v Kings Mercantile Co., supra)*, apart from the fact that the court incorrectly relied on *Robbins* in a case not involving a performance bond, it is clear that the language presented in *Gorman,* significantly different from that presented here, could reasonably have been construed under the circumstances presented as not intended to embrace litigation expenses.

On the basis of the authorities set forth above, it is clear that broad indemnification agreements will be interpreted as embracing litigation expenses where that meaning clearly appears from the clause on application of the usual criteria for construing contracts, even though such a term does not

specifically appear in the agreement. It is equally clear that the broad indemnification clause at issue here, clearly embraced, and was intended to embrace, litigation expenses.

As we understand the analysis set forth in the dissenting opinion, it rests on the supposition that it was unlikely that a party to the transaction would have agreed to indemnify the escrowee for litigation expenses incurred in a lawsuit commenced by the other party, from which the conclusion is drawn that the parties did not intend the clause with which we are concerned to embrace litigation expenses. In our opinion, it is not at all difficult to believe that parties to such a transaction would assume that obligation. What is far more difficult to believe is that a respected law firm would accept the responsibilities of an escrowee, with the inherent risk that a good-faith discharge of those responsibilities might give rise to an unjustified lawsuit by an aggrieved party, without a firm promise that it would be protected against the heavy financial detriment inherent in defending against such a lawsuit.

The approach taken in the dissenting opinion misconceives in a fundamental way the central importance of escrow arrangements to those who have entered into an agreement for the sale of real property. The opinion appears to treat the escrow arrangement as a mere convenience, of little importance, and one that the parties could just as well do without. But, in reality, it is critically important to the consummation of the kind of agreement to sell real property into which the defendant and seller entered, that there be a trustworthy escrowee with the powers and responsibilities that were assigned the escrowee here. As between the parties to the underlying agreement, who have a compelling interest in the successful fulfillment of the agreement into which they have presumably entered in good faith, and the escrowee, it surely makes more sense for the burden of litigation expenses incurred by the escrowee in defending against an unjustified action by one of the parties to the agreement to be borne by the parties themselves rather than by the escrowee.

The dissenting opinion goes on to contend that if the defendant here were found responsible for the litigation expenses incurred by the plaintiffs in the action commenced by the defendant, it would be entitled to indemnification for half of those expenses from the other party, the client of the plaintiff law firm. With respect, this seems to us an unrealistic interpretation of the consequences that would follow from construing the indemnification clause to embrace litigation expenses.

We should have supposed that common sense and familiar, universally accepted indemnification principles would make it undisputably clear that as between the two parties to the transaction, the ultimate responsibility for indemnification of litigation expenses would rest on the party whose unjustified lawsuit gave rise to those expenses.

As already observed, the dissenting opinion, although rejecting the construction of the relevant clause set forth here, does not undertake to present an alternative interpretation. This is understandable. It is not easy to find an alternative construction that is consistent with the language of the clause and the realities of the situation. Let us consider some possible alternative constructions.

Is it possible that the clause should be construed as limited to indemnification of expenses incurred in defending against actions by third parties although no such limiting language appears in the clause and it commenced with a limiting definition of the liabilities of the escrowee to the parties? If so, does the clause indemnify the escrowee for litigation expenses incurred in actions brought by third parties? Alternatively, does the clause indemnify the escrowee against both lawsuits by third parties and lawsuits by one of the signatories, but only indemnifies the escrowee against litigation expenses incurred in actions by third parties and not in an action by one of the parties to the transaction? If so, what language provides the basis for such differential treatment? Or are we to believe that the clause indemnifies the escrowee against losses and expenses in actions both by third parties and by one of the parties to the transaction, but does not in either situation embrace litigation expenses? If so, what expenses were intended to be embraced in the indemnification clause? The reality is that there is no alternative construction of the clause that makes any sense whatever. The absence of any plausible alternative construction confirms the conclusion that the clause embraced a commitment by the parties to indemnify the escrowee against litigation expenses where it was determined that the escrowee had acted in good faith and without gross negligence.

We also disagree with the implicit criticism in the dissenting opinion of the escrowee for not "simply retain[ing] the down payment or deposit[ing] it in court * * * thereby avoiding all prospect of liability." These options were made available to the escrowee in the agreement, but surely these risk-free options were intended to be utilized only in a situation in

which the escrowee was in genuine doubt as to the merits of the issue presented, and were not designed as a refuge behind which the escrowee could hide to avoid acting in accordance with its honest evaluation of the situation.

The message to escrowees implicit in this aspect of the dissenting opinion does not seem a constructive one. If provisions of the kind referred to were intended to be used by escrowees to avoid acting in accordance with their honest, good-faith judgment, it would be difficult to understand what appropriate purpose is served by vesting an escrowee with the powers and responsibilities that were vested in this agreement, and which are commonly encountered in escrow arrangements.

Accordingly, the order of the Supreme Court, New York County (Bruce McM. Wright, J.), entered August 14, 1986, which dismissed plaintiff's action to recover previously incurred litigation expenses for failure to state a cause of action, should be reversed, on the law, with costs, and the motion to dismiss should be denied.

MURPHY, P. J. (dissenting). Plaintiff Breed, Abbott sues to recover attorney's fees, allegedly amounting to $100,000, expended by it in its *pro se* defense of an action brought by the present defendant R. Lee Hulko. In the prior action, Hulko had claimed that Breed, Abbott, which had been designated the escrow agent in connection with a transaction for the sale of certain real property to Hulko, had improperly released Hulko's $82,500 down payment to the sellers, Mr. and Mrs. Hugh Connell. After a trial, it was determined that Hulko had defaulted under the contract of sale and that the escrowed sum had, therefore, been properly released. Breed, Abbott was also found to be shielded from liability by that part of the escrow provisions included in the contract of sale which provided that "[t]he escrowee shall not be liable to either of the parties for any act or omission except for bad faith or gross negligence". It is the clause immediately following that just quoted which constitutes the basis for the present action. It reads, "and the parties hereby indemnify the escrowee and hold the escrowee harmless from any claims, damages, losses or expenses arising in connection herewith." Breed, Abbott claims, and the majority has held, that although this clause does not specifically mention attorney's fees, attorney's fees are nevertheless encompassed by its broad language.

Initially, it is noteworthy that the indemnification obliga-

tion imposed by the clause upon which Breed, Abbott relies is joint. As has been observed by the Court of Appeals in language applicable to the clause here at issue, "[i]t is a general rule so well established as not to require extended discussion that promises by two or more persons create a joint duty unless the contrary is stated. It is a general presumption of law that when two or more persons undertake an obligation they undertake jointly, words of severance being necessary to overcome this primary presumption." *(United States Print. & Lithograph Co. v Powers,* 233 NY 143, 152; *see also, Alexander v Wheeler,* 64 AD2d 837; *Clayman v Goodman Props.,* 518 F2d 1026; *Welch v Sherwin,* 300 F2d 716, 718; *St. Regis Paper Co. v Stuart,* 214 F2d 762, 766, *cert denied* 348 US 915; *Donzella v New York State Thruway Auth.,* 7 AD2d 771.) No words of severance having been included by Breed, Abbott when it, in its capacity as attorney for the sellers, drafted the indemnity pursuant to which it now claims as beneficiary, the unavoidable conclusion is that both parties to the contract of sale, the Connells as well as Hulko, are equally obligated to indemnify Breed, Abbott for whatever expenditures are included within the indemnity. The Connells, however, have not been joined in this action.

It was, of course, the rule at common law that the nonjoinder of joint obligors constituted a ground for the dismissal of an action *(see,* Calamari and Perillo, Contracts § 20-3 [a], at 742 [2d ed]; Restatement [Second] of Contracts § 117). Although the rule has been relaxed somewhat by statutory provisions such as CPLR 1501 permitting an obligee to proceed against less than all the named defendants in an action based upon a joint obligation, this relaxation was not meant to effect any drastic modification of the preexisting rule. As Joseph M. McLaughlin notes in his Practice Commentaries to CPLR 1501,

"Properly construed, this section should not erode the common-law rule that joint obligors are necessary parties. See Restatement, Judgments § 25 (1942). If two parties are jointly liable, *e.g.,* co-makers of a promissory note, both are ordinarily necessary parties, and if jurisdiction can be obtained over both, one obligor may insist that the other be joined * * *

"The purpose of CPLR 1501 is to permit a plaintiff who cannot obtain jurisdiction over all the joint obligors to proceed against those whom he has served. In these cases, the section permits continuation of the action, and the final judgment will be joint in form, although it may be executed only against the

jointly held property of the co-obligors, and the individual assets of the obligor who was served." (McKinney's Cons Laws of NY, Book 7B, C1501:1, at 392; *see also,* 2A Weinstein-Korn-Miller, NY Civ Prac ¶ 1501.02.) It was obviously possible for Breed, Abbott to obtain jurisdiction over the Connells, its clients and co-obligors under the indemnity which Breed, Abbott drafted while in their employ. They should then have been joined. They are, however, not even named. Surely, the Connells ought to have been heard upon the crucial question which has arisen at this action's inception, namely, whether the indemnity under which they are indisputably obligated articulates an enforceable promise to reimburse Breed, Abbott for attorney's fees incurred in an action brought by their co-obligor Hulko. Instead, in their absence, this court has seen fit to pronounce expansively that, "[i]t is * * * clear that the broad indemnification clause at issue here, clearly embraced, and was intended to embrace, litigation expenses."

The majority apparently is not troubled by the Connells' absence since it finds the prospect of liability for the Connells "unrealistic". The majority goes on to state, "[w]e should have supposed that common sense and familiar, universally accepted indemnification principles would make it undisputably clear that as between the two parties to the transaction, the ultimate responsibility for indemnification of litigation expenses would rest on the party whose unjustified lawsuit gave rise to those expenses." While the majority may possess the most finely developed sense of realism, I do not think it can be denied that the continuation of this action will see the Connells joined, if not by Breed, Abbott, which would be understandably reluctant to serve its former client with process, then by Hulko, who will undoubtedly maintain that if the indemnity is to be enforced at all it must be enforced as a joint obligation. Nor do I think it can be denied that the Connells will be at a tremendous disadvantage when they are joined, their attorney fee liability having, for all practical purposes, already been determined by this court's present construction of the indemnity. It will be small comfort to them that the majority, without citation to any authority, has stated that "common sense and familiar, universally accepted indemnification principles" will ultimately place the entire liability with Hulko.

Indeed, it is strange that the majority, after having gone on at length about how indemnification clauses are not to be excepted from the "normal rules of contractual construction",

then eschews those rules. For there is no question that the Connells are obligated under the indemnity here at issue, and if the nature of the obligation for attorney's fees is as clear as the majority claims, there would seem no principled ground to release the Connells from the promise which the majority would attribute to them. Obviously, neither law nor equity, much less "common sense" or "familiar, universally accepted indemnification principles", may be invoked to cancel an obligation the nature of which, according to the majority, was plain from the language of the obligors' agreement. Such would be clearly contrary to the most basic precepts of the law of contracts. What the majority proposes is nothing less than the rewriting of the contract to permit a result more congenial to their view of the equities. But this is not something which courts do, or, at least, I had not thought so. As Judge Keating wrote in *Rodolitz v Neptune Paper Prods.* (22 NY2d 383, 386), "the rule is well settled that a court may not, under the guise of interpretation, make a new contract for the parties or change the words of a written contract so as to make it express the real intention of the parties if to do so would contradict the clearly expressed language of the contract". *(See also, Slatt v Slatt,* 64 NY2d 966; *Morlee Sales Corp. v Manufacturers Trust Co.,* 9 NY2d 16; *Cowper Co. v CDC-Troy, Inc.,* 50 AD2d 1076; 22 NY Jur 2d, Contracts, § 190.) If nothing else is clear about the subject indemnity clause, and, indeed, little else is, it is that the contracting parties agreed to be jointly obligated thereunder. This basic fact is not changed by the majority's appeal to "common sense" and unstated but, we are told, "universally accepted" principles of indemnification. It is a contract we construe, and the liability of the parties thereto depends upon the terms to which they have agreed.

It would seem clear from the foregoing that the Connells ought to be joined in this action before the court proceeds to consider the substantive questions upon which their ultimate liability will depend. As co-obligors they are plainly "[p]ersons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action" (CPLR 1001 [a]). Accordingly, the proper course is not to adjudicate the central question in the action in the Connells' absence and then attempt to minimize the consequences of the holding upon them, but to reverse the order appealed to the extent of vacating the judgment in defendant's favor and

dismissing the action, without prejudice, pursuant to CPLR 1003, for nonjoinder of a party who should be joined under CPLR 1001. Although neither party has moved for this relief, it is clear that the issue of nonjoinder may be raised at any time in the litigation (CPLR 1003; *Matter of Fellner v McMurray,* 41 AD2d 853; 2 Weinstein-Korn-Miller, NY Civ Prac ¶ 1001.03) and that it may be raised by the court on its own motion. *(Ibid.; see also, Albert C. v Joan C.,* 119 AD2d 803.)

Assuming, however, that the action is not to be dismissed on the aforementioned grounds, and that it is proper to do as the court has done and rule upon the scope of the indemnity when only one of the several jointly obligated indemnitors is before the court, I am of the view that the appealed judgment dismissing Breed, Abbott's action upon the indemnity for failure to state a cause of action should be affirmed.

There can be no dispute over the general proposition that broad language of indemnity may create an obligation to reimburse for attorney's fees *(see, e.g., Lavorato v Bethlehem Steel Corp.,* 91 AD2d 1184; *Owens v Palm Tree Nursing Home,* 89 AD2d 619, 620-621). Whether it will be construed to do so, however, depends in each case upon whether the general language involved may be said clearly to give rise to the specific obligation claimed *(see, e.g., Zissu v Bear, Stearns & Co.,* 805 F2d 75, 79-80).

If the construction of the indemnity adopted by the majority is accepted, it follows that the contracting parties, the Connells as well as Hulko, agreed to reimburse the escrowee for attorney's fees incurred by it in defending actions brought not only by third parties as is most often the case when language of indemnification is used *(see, e.g., Lavorato v Bethlehem Steel Corp., supra; Owens v Palm Tree Nursing Home, supra; Matter of Campbell,* 176 Misc 543; *Colon v Automatic Retailers Assn. Serv.,* 74 Misc 2d 478), but by one or all of the indemnitors themselves. The unavoidable consequences of this reading of the indemnity is that one indemnitor will be liable to reimburse Breed, Abbott for up to half its attorney's fees in the event of a meritless action against Breed, Abbott by the other indemnitor.

It cannot be supposed, absent the clearest agreement, that indemnitors would undertake to answer for the consequences of each other's meritless actions against the indemnitee when they possessed contractual means to place the indemnity obligation with the party who initiated and maintained the

action and thereby caused the indemnitee's litigation expense. Had the clause here at issue, instead of employing broad language of indemnification, stated quite clearly that the contracting parties would be jointly liable for Breed, Abbott's counsel fees in the event of a meritless suit by one of them against the escrowee, it is at best doubtful that the agreement would have been entered into. The degree of specificity required is that which would give the indemnitors clear and unequivocal notice as to the nature and extent of their obligation (see, Zissu v Bear, Stearns & Co., supra, at 79-80). Assuming that the indemnification clause means what Breed, Abbott and the majority claim it does, its meaning was not sufficiently articulated to give the indemnitors the required notice.

This conclusion is in no way impaired by the majority's assertion which they are at pains to prove, apparently by process of elimination, that there is no viable alternative to their construction of the indemnity. Although it does not appear that any great amount of thought was given to the indemnity clause's precise significance at the time of its inclusion in the contract, it may well be that the clause means what the majority says it means. The question remains, however, as to whether the indemnity was expressed in sufficiently clear terms to convey to the indemnitors precisely what was being required of them. Clearly, it was not. Can it honestly be said that if, instead of couching the indemnification clause in general terms, Breed, Abbott had drafted the agreement to state explicitly that the indemnitors agreed to answer jointly for attorney's fees incurred by Breed, Abbott in the defense of any lawsuit brought respecting its conduct as escrowee, including a lawsuit by one of the indemnitors, that the indemnitors would have agreed to such a clause? I think it self-evident that the indemnitors would not ordinarily have agreed to such a provision for the simple reason that their contract could easily have provided for the escrowee's litigation expenses to be paid by whichever indemnitor had caused them. By contrast, it would be perfectly reasonable to expect the indemnitors to agree to be jointly liable for attorney's fees incurred by the escrowee in defending actions by third parties since at the time of the contract of sale there existed no contractual mechanism by which those yet unidentified parties might have been obligated.

The need for clarity and precision in the drafting of an indemnity provision such as the one at bar cannot be too strongly emphasized. To be borne in mind is the fact that the

indemnity clause was included in the escrow provisions of a contract which had as its principal objective the sale of real property. Realistically, the subject indemnity provision which addressed contingencies that the contracting parties most certainly regarded as remote, would not have been given especially close scrutiny by them. Under these circumstances, and considering the unusual nature of the obligation which it is claimed the indemnification clause was intended to impose, it was not sufficient for Breed, Abbott to use generalities in its composition of the clause.

The obligation of Breed, Abbott to use suitably specific language in the indemnity clause it drafted for its own benefit is further enhanced by the fact that certain of the joint obligors thereunder were its own clients. Certainly, the Connells had every reason to expect that Breed, Abbott would not, in the course of representing them, draft an agreement leaving them unnecessarily exposed for attorney's fees of undetermined magnitude, much less attorney's fees of undetermined magnitude incurred by Breed, Abbott itself. The need for absolute clarity in an agreement giving rise to such an extraordinary obligation between client and counsel cannot be stressed enough. It is abundantly clear that this standard was not met by the general language of indemnity here employed by Breed, Abbott. Surely, it is not unreasonable to expect, and indeed require, that when a law firm drafts an agreement pursuant to which it would shift its litigation expenses to another, the agreement will be lucidly and precisely put, particularly when one of the obligors is its own client.

Given the very high standard to which Breed, Abbott is to be held in drafting an indemnity agreement covering attorney's fees, to which its client is party and of which it, Breed, Abbott, is beneficiary, it is appropriate to dispose of the present claim on a motion to dismiss for failure to state a cause of action. The nature and extent of the indemnitors' obligation should have been unambiguously clear from the face of the indemnity. As it was not, the indemnitors did not receive the notice to which they were entitled and an action for indemnification should not be permitted to be maintained.

It is in any event clear that the majority has not the slightest intention that the indisputably joint obligation at issue in this case should be enforced as such. Rather, the majority apparently feels that it should be selectively enforced so as to accord with their view of the equities. The court would thus sever the obligation, making of it something which

its drafter did not. It is not the parties' agreement that the court would see eventually enforced, but its own revision of that agreement. The majority evidently finds this extraordinary approach justified in light of its singular conviction that one who has by initiating an ultimately meritless action, caused another litigation expenses, should bear the burden of those expenses. While this may perhaps appeal to our sense of what is fair, it is not the law. Indeed, the law is well settled that absent a statutory provision or an agreement between the parties pursuant to which attorney's fees are to be recovered from the losing party, each party must shoulder its own litigation expenses. *(Matter of A.G. Ship Maintenance Corp. v Lezak,* 69 NY2d 1, 5; *see also, City of Buffalo v Clement Co.,* 28 NY2d 241, 262-263; *Mighty Midgets v Centennial Ins. Co.,* 47 NY2d 12, 21-22.)* As the subject indemnity is not to be enforced according to its terms, it is this settled rule of law which should govern, not the court's substituted sense of what is equitable.

Moreover, the equities, assuming them to be relevant, are not so clear as the majority seems to suggest. There was nothing in the subject escrow agreement which compelled Breed, Abbott to release the down payment to the Connells upon its unilateral determination that Hulko was in default. Although Breed, Abbott gave itself this dangerous option under the agreement it drafted, it could have complied with the agreement by simply retaining the down payment or depositing it in court pending resolution of the conflicting claims of the parties to the transaction, thereby avoiding all prospect of liability. The agreement did, after all, provide "[t]he parties acknowledge that the escrowee is acting solely as a stakeholder for their convenience." Reliance upon the rather inartistically drawn indemnity at issue would have been entirely unnecessary had a more prudent course—one more in keeping with the essential character of an escrowee's position as a neutral stakeholder—been pursued. I see nothing unfair in requiring Breed, Abbott to shoulder its own attorney's fees in connection with litigation it needlessly encouraged, particularly when it failed to protect itself by drafting a suitably specific indemnity clause.

Having made these arguments for the dismissal of the action on the merits, I would emphasize that many of these points would be most appropriately raised by the Connells who should have been joined and heard prior to the determination of the within motion.

Accordingly, the judgment of the Supreme Court, New York County (Bruce McM. Wright, J.), entered August 14, 1986, which dismissed plaintiff's action to recover previously incurred litigation expenses, should be reversed, to the extent of vacating the judgment and dismissing the action *sua sponte* pursuant to CPLR 1003, without prejudice, for failure to join a party who ought to be joined pursuant to CPLR 1001.

CARRO and KASSAL, JJ., concur with SANDLER, J.; MURPHY, P. J., and ELLERIN, J., dissent in an opinion by MURPHY, P. J.

Order, Supreme Court, New York County, entered on or about August 14, 1986, reversed, on the law, and the motion to dismiss is denied. Appellant shall recover of respondent $75 costs and disbursements of this appeal.