**FOSTER POULTRY FARMS, INC. and Fresno Farming LLC, Plaintiffs,**

v.

**SUNTRUST BANK, Defendant.**

**Suntrust Bank, Counterclaimant,**

v.

**Foster Poultry Farms, Inc. and Fresno Farming LLC, Counterdefendants.**

**No. CIV. F–04–5513 OWW SMS.**

United States District Court,
E.D. California.

June 24, 2004.

James Leslie Sadler, Stockton and Sadler, Modesto, CA.

Buckmaster deWolf, Howrey Simon Arnold and White, San Francisco, CA.

Carmine R Zarlenga, Howrey Simon Arnold & White, Washington, DC.

James S Carter, Howrey and Simon, Washington, DC.

Lowell Thorson Carruth, McCormick Barstow Sheppard Wayte and Carruth, Fresno, CA.

James H Cox, Pro Hac Vice, Greenberg Traurig LLP, Atlanta, GA.

**MEMORANDUM DECISION AND ORDER ON PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**

WANGER, District Judge.

## I. *INTRODUCTION*

Foster Poultry Farms, Inc. ("Foster Farms") and Fresno Farming LLC ("Fresno Farming") (Collectively "Plaintiffs") move to dismiss the counterclaim of Suntrust Bank ("Defendant") pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Doc. 7 ("Plaintiffs' Motion to Dismiss"), filed May 3, 2004. Defendant opposes Plaintiffs' motion. Doc. 13 ("Defendant's Opposition"), filed May 24, 2004. Oral arguments were heard June 7, 2004.

## II. *PROCEDURAL HISTORY*

Plaintiffs sued, in the Superior Court of the State of California for Stanislaus

County, for monetary damages and declaratory relief arising from an alleged breach of contract with Defendant. Doc. 1, Exh. A ("Plaintiffs' Complaint"), filed March 9, 2004. Pursuant to 28 U.S.C. §§ 1332(a)(1), 1441, and 1446, Defendant removed the action to the United States District Court for the Eastern District of California. Doc. 1 ("Notice of Removal") at 1, filed April 1, 2004. Defendant answered Plaintiffs' Complaint, denied the material allegations of the complaint, and alleged an affirmative defense. *Id.*

Defendant then filed a counterclaim seeking "to recover all its fees, costs and expenses related to this action from Plaintiffs jointly and severally." Doc. 5 ("Defendant's Counterclaim"), at 6, ¶ 7, filed April 8, 2004. Plaintiffs moved to dismiss this counterclaim. *See* Plaintiffs' Motion to Dismiss. They filed a declaration in support of this motion. Doc. 8 ("Wolf's Declaration"), filed May 3, 2004. Defendant opposed this motion. *See* Defendant's Opposition. Plaintiffs replied to Defendant's opposition. Doc. 17 ("Plaintiffs' Reply"), filed May 28, 2004.

Oral arguments were heard June 7, 2004.

## III. *STATEMENT OF FACTS*

Plaintiffs allege that they "entered into a written Credit Agreement with defendant pursuant to which plaintiffs paid defendant to issue a Letter of Credit in favor of a third party beneficiary." Plaintiffs' Complaint at 1–2, ¶ 1. Plaintiffs allege that Defendant breached a number of terms of the agreement, including "transferring beneficial ownership of the Letter of Credit to itself in violation of the transfer provision." *Id.*

Foster Farms is allegedly a California corporation that "produces, packages, and sells a wide variety of poultry products predominately in the western United States." *Id.* at 2, ¶ 2. Fresno Farming is allegedly a California limited liability company "established to facilitate an asset purchase transaction in which Foster Farms purchased substantially all assets of another poultry producer in 2001." *Id.* at 2, ¶ 3. Defendant is allegedly a commercial bank incorporated in Georgia "that has provided financial and administrative services to plaintiffs." *Id.* at 2, ¶ 4.

Plaintiffs allege that in 2001 they "entered into a written agreement to acquire substantially all assets of Zacky Farms, Inc. ('Zacky Farms'), a poultry producer in Southern California." *Id.* at 2, ¶ 5. Plaintiffs promised to pay Zacky Farms approximately $105 million under three long-term purchase notes. *Id.* at 2, ¶ 6. To provide Zacky Farms assurance that these notes would be paid, Fresno Farming entered into a credit agreement with Defendant, who agreed to, and did, issue a letter of credit in the amount of $150,723,202.38 designating the seller Zacky Farms as the beneficiary. *Id.* at 3, ¶ 6. On October 5, 2001, Foster Farms entered into a Guaranty Agreement with Defendant through which Foster Farms "guaranteed Fresno Farming's performance under the Credit Agreement." *Id.* at 3, ¶ 7.

Plaintiffs allege Defendant "has breached the Credit Agreement and the Letter of Credit ... attempting to transfer beneficial ownership of the Letter of Credit to itself ... manipulat[ing] the credit risk in an effort to permit SunTrust to reap substantial continuing fees without providing any corresponding services or benefits ... overcharg[ing] plaintiffs for fees ... [and] engag[ing] in numerous acts of willful misconduct in utter disregard for plaintiffs' rights and SunTrust's obligations to plaintiffs." *Id.* at 3–4, ¶ 9. Specifically, Plaintiffs allege Defendant "disclosed confidential information[,] ... entered into dealings with Zacky Farms relating to the same transaction[, and]

... agreed to advance monies to Zacky Farms in exchange for Zacky Farms' agreement to transfer beneficial ownership of the Letter of Credit to SunTrust, along with a portion of the Notes ... [in] violat[ion of] the express terms of the Letter of Credit and SunTrust's obligations to plaintiffs ...." *Id.* at 4, ¶¶ 10–12. Plaintiffs allege that Defendant can no long "fairly and objectively discharge its obligations ... because it now has conflicting and irreconcilable interests ... as both issuer and the ultimate beneficiary of the Letter of Credit." *Id.* at 4, ¶ 13.

Plaintiffs allege Defendant "committed a material breach of the Credit Agreement and the accompanying Letter of Credit ... [and seeks] a judgment pursuant to Cal. Code Civ. P. 1060 declaring that defendant SunTurst has breached the Credit Agreement and the accompanying Letter of Credit and that no fees are payable thereunder to SunTrust." *Id.* at 6, ¶¶ 18, 23. Plaintiffs seek to be excused from paying fees to Defendant, to remove Defendant as the "Administrative Agent and Collateral Agent under the Credit Agreement," to recover damages "not less than $16 million," to recover "attorneys' fees and costs pursuant to Section 10.3(b) of the Credit Agreement and Cal. Civ.Code § 1717," to recover "interest (including prejudgment interest) and costs of suit," and to recover "other relief as may be just and proper." *Id.* at 6–7, ¶ 23(a-f).

Defendant seeks through its counterclaim "any and all costs, losses, liabilities, claims, damages, and expenses, which Counterclaimant [i.e., Defendant] has incurred or will incur directly or indirectly by reasons of this action or the claims set forth in the Complaint." Defendant's Counterclaim at 5–6, ¶ 6. Defendant argues that pursuant to Credit Agreement § 10.3(b), Fresno Farming agreed to indemnify Defendant. *Id.* at 5, ¶ 4. In addi-

tion, Defendant argues that Foster Poultry "agreed to guarantee all of the obligations and indemnities of FRESNO FARMING, LLC, to [Defendant] ...." *Id.* at 5, ¶ 5. As a result of these indemnity provisions, Defendant alleges that it "is entitled to recover all of the fees, costs and expenses related to this action from Plaintiffs jointly and severally." *Id.* at 6, ¶ 7.

Plaintiffs moved to dismiss Defendant's counterclaim pursuant to Fed.R.Civ.P. 12(b)(6), alleging that Defendant's counterclaim "seeks to rely on a provision of the Credit Agreement intended to protect it from liability resulting from claims asserted by third parties outside of the agreement." Plaintiffs' Motion to Dismiss at 2:19–21. Defendants oppose and argue that "nothing in the language of the indemnification provision indicates that the parties to the Credit Agreement intended to limit indemnification to third-party claims." Defendant's Opposition at 6:9–11.

Plaintiffs and Defendant presented oral arguments only on Plaintiffs' motion to dismiss on June 7, 2004.

## IV. STANDARD OF REVIEW

A. *Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted—Fed. R. Civ. P. 12(b)(6)*

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is disfavored and rarely granted: "[a] complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997) (stating that the issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer

evidence to support the claim). In deciding whether to grant a motion to dismiss, the court "take[s] all of the allegations of material fact stated in the complaint as true and construe them in the light most favorable to the nonmoving party." *Rodriguez v. Panayiotou,* 314 F.3d 979, 983 (9th Cir.2002).

"The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001) (citations omitted). For example, matters of public record may be considered, including pleadings, orders and other papers filed with the court or records of administrative bodies, *see Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir.1986), while conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981); *see also Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned."). Allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint. *See Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir. 1987).

## V. *LEGAL ANALYSIS*

This dispute centers on whether the indemnity provision in the Credit Agreement limits Defendant's indemnity rights to third-party claims. The indemnification agreement provides:

> The Borrower shall indemnify each Agent, the Issuing Bank and each Lender, and each Related Party of any of the foregoing (each, an *"Indemnitee"*) against, and hold each of them harmless from, any and all costs, losses, liabilities, claims damages and related expenses, including the fees, charges and disbursements of any counsel for any Indemnitee, which may be incurred by or asserted against any Indemnitee arising out of, in connection with or as a result of (i) the execution or delivery of this Agreement or any other agreement or instrument contemplated hereby, the performance by the parties hereto of their respective obligations hereunder or the consummation of any of the transactions contemplated hereby, (ii) any Loan or Letter of Credit or any actual or proposed use of the proceeds therefrom (including any refusal by the Issuing Bank to honor a demand for payment under the Letter of Credit if the documents presented in connection with such demand do not strictly comply with the terms of the Letter of Credit), (iii) any actual or alleged presence or release of Hazardous Materials on or from any property owned by the Borrower or any Subsidiary or any Environmental Liability related in any way to the Borrower or any Subsidiary of (iv) any actual or prospective claim, litigation, investigation or proceeding related to any of the foregoing, whether based on contract, tort, or any other theory and regardless of whether any Indemnitee is a party thereto; *provided,* that the Borrower shall not be obligated to indemnify any Indemnitee for any of the foregoing arising out of such Indemnitee's gross negligence or willful misconduct as determined by a court of competent jurisdiction in a final and nonappealable judgment.

Wolf's Declaration, Exh. A at 71–72, § 10.3(b).

Plaintiffs claim this agreement is a "typical third-party indemnification provision"

and that Defendant is attempting to "re-configure [the provision] ... into a far-reaching agreement to immunize it from paying any of its legal costs or damages arising from its breach of the Credit Agreement and related duties." Plaintiff's Motion to Dismiss at 2:8–13. Defendants dispute this interpretation of the indemnification agreement but do admit the following limitation to Plaintiffs' potential liability:

> SunTrust only expects indemnification from Plaintiffs if it is determined that SunTrust committed no wrong. In fact, the indemnification provision clearly states that Plaintiffs are not obligated to indemnify SunTrust for damages which arise from SunTrust's own "gross negligence or willful misconduct." The issue of whether the indemnification would be enforceable as an exculpatory clause is not, and will not be, an issue in this case.

Defendant's Opposition at 2:19–23. Defendant alleges the coverage extends to "any" liability, with the exception of claims arising from Defendant's "gross negligence or willful misconduct":

> The ... indemnification language, agreed to by Plaintiffs, is broadly stated, covering "any" liabilities, claims and damages and specifically referencing and including attorney's fees. The language of Section 10.3(b) reflects the intention of both Plaintiffs and SunTrust that the indemnification obligations under the Credit Agreement were to be all-encompassing and cover all claims of any kind that relate in any way to the transaction. The only exception is spelled-out at the end of the paragraph-only claims arising out of "gross negligence or willful misconduct," as defined by a court of competent jurisdiction, are excluded from the indemnity obligation. All other claims, including breach of contract claims between parties, fall within the obligations to indemnify.

*Id.* at 4:10–19. Defendant argues that any damages from any cause whatsoever except Suntrust's own gross negligence or willful misconduct are the ultimate responsibility of Plaintiffs. The Credit Agreement does not contain an express attorney's fees provision entitling any party who prevails in any action to enforce or interpret the Agreement to recover attorney's fees and related expenses.

### A. *New York Law Governs*

The Credit Agreement including the indemnity clause, is governed by the law of the State of New York:

> This Agreement and the other Credit Documents shall be construed in accordance with and be governed by the law (without giving effect to the conflict of law principles thereof) of the State of New York.

Wolf's Declaration, Exh. A at 75 (§ 10.5(a)). Plaintiffs allege that the Agreement is governed by New York law. Plaintiffs' Motion to Dismiss at 2:14. Defendant does not contest this choice of law provision, and itself cites New York law, and federal case law from New York and the Second Circuit. Defendant's Opposition at 4:23, 5:7–8, and 7:7–8. Where parties choose by their contract the state law that governs the agreement, the choice is honored, absent a legal reason not to do so. *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 465, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992).

### B. *Hooper and Indemnity Clauses*

Defendant's opposition relies upon Second Circuit cases. Defendant cites a decision from the Southern District of New York to explain the rule "enunciated" by the Court of Appeals of New York, the highest court of the state, governing indemnity provisions in intra-party litigation arising from breach of contract claims. Defendant's Opposition at 5:7–8; *see also*

*Hooper Assoc., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). Defendant cites only a part of the following passage from the district court's opinion:

> Under New York law, an agreement by a party to a contract to indemnify the other for attorney's fees incurred in litigation between them must be "unmistakably clear from the language of the promise," *Hooper Assoc., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492, 548 N.E.2d 903, 905, 549 N.Y.S.2d 365, 367 (1989), or else it must be manifest from the surrounding facts and circumstances or purpose of the agreement. *See id.* (citing *Breed, Abbott & Morgan v. Hulko*, 139 A.D.2d 71, 531 N.Y.S.2d 240 (1st Dep't 1988), *aff'd*, 74 N.Y.2d 686, 541 N.E.2d 402, 543 N.Y.S.2d 373 (1989)). The Court must read the indemnification provision in conjunction with all other provisions in the agreement to avoid inconsistencies or an interpretation which would render another provision superfluous or without effect. *See Hooper*, 74 N.Y.2d at 492–93, 549 N.Y.S.2d 365, 548 N.E.2d 903.

Defendant's Opposition at 5:10–20 (quoting *Promuto v. Waste Mgmt., Inc.*, 44 F.Supp.2d 628, 650 (S.D.N.Y.1999)). Relying upon part of this language from *Promuto*, Defendant argues that, although the *Hooper* court stated that an agreement to indemnify for attorney's fees for breach of contract claims must be "unmistakably clear from the language of the promise," the court may still consider "the intent of the parties . . . [and] is not restricted only to the contract itself." Defendant's Opposition at 5:3–7.

Defendant argues that indemnification for attorney's fees may be authorized, even without "unmistakably clear" language, if the intent is "manifest from the surrounding facts and circumstances or purpose of the agreement," relying on *Hooper*. In *Hooper*, Plaintiff successfully sued the oth-er contracting party for breach of contract and sought to recover attorney's fees incurred in prosecuting the contract action. 74 N.Y.2d at 489, 549 N.Y.S.2d 365, 548 N.E.2d 903. The trial and appellate courts found that the contract's indemnity clause was not limited to third-party claims and allowed Plaintiff to recover attorney's fees in its breach of contract suit. *Id.* at 490, 549 N.Y.S.2d 365, 548 N.E.2d 903. The parties, however, had failed to define in their contract the scope of the defendant's promise to indemnify plaintiff for "reasonable counsel fees." *Id.* at 491, 549 N.Y.S.2d 365, 548 N.E.2d 903. The court, as a result, had to determine whether the indemnity provision, (1) was limited to attorney's fees incurred by plaintiff in claims involving third parties or (2) applied as well to fees that arose in prosecuting a suit against the defendant for claims under the contract. *Id.* The court based its decision on the following general principles limiting the recognition and extension of indemnity provisions:

> Words in a contract are to be construed to achieve the apparent purpose of the parties. Although the words might seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view. This is particularly true with indemnity contracts. When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed. The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances. Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that

parties are responsible for their own attorney's fees, *the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.*

*Id.* at 491–92, 549 N.Y.S.2d 365, 548 N.E.2d 903 (internal citations and quotations omitted, and emphasis added). *Hooper* found there was no "unmistakably clear" language that indemnity should be extended to suits by the plaintiff against the defendant for claims arising from the contract. *Id.* The New York Court of Appeals reversed the lower courts and refused to extend indemnity to intra-party breach of contract claims, unless it is unmistakably provided for in the language of the agreement.

Defendant maintains that this narrow general rule was expanded in *Promuto,* suggesting the scope of indemnity is to be judged not only from the unmistakably clear language of the agreement, but also "from the surrounding facts and circumstances or purpose of the agreement." 44 F.Supp.2d at 650. *Promuto* based its interpretation of the general rule and this exception, on *Hooper. Id.* A close reading of *Hooper,* however, discloses that the court's interpretation was not as expansive as Defendant maintains.

In *Hooper,* the plaintiff argued that the court in *Breed, Abbott* "adopted a rule liberalizing the interpretation of indemnification clauses when a party seeks indemnification of legal expenses incurred in successfully asserting its rights under a contract ...." 74 N.Y.2d at 493, 549 N.Y.S.2d 365, 548 N.E.2d 903; *see also* 139 A.D.2d 71, 74–75, 531 N.Y.S.2d 240 (1988). In rejecting this attempt to expand the recoverability of attorney's fees under a general indemnity agreement, *Hooper* found that the general rules were "settled" and that intent was considered in *Breed, Abbott* "on the narrow ground that

the intent of the parties was manifest ...." 74 N.Y.2d at 493, 549 N.Y.S.2d 365, 548 N.E.2d 903. The only reason the "parties' intent" was considered was on account of the unique character of the particular indemnity agreement applicable to an escrow transaction:

if the promise to indemnify Breed, Abbott did not extend to " 'legal expenses incurred in defending against an action by one of the parties alleging misconduct by the escrowee which resulted in a determination in favor of the escrowee' ", it was " 'difficult, if not impossible, to ascertain for what it was that the parties had agreed to indemnify the escrowee.' "

*Id.* (quoting 74 N.Y.2d at 687, 543 N.Y.S.2d 373, 541 N.E.2d 402 (quoting 139 A.D.2d at 73, 531 N.Y.S.2d 240)). These unique circumstances, where the indemnity provision could not be understood as extending to third-party claims, were not present in *Hooper,* where the indemnity agreement expressly applied to third-party claims:

In this case [i.e., *Hooper* ], however, the potential existed for third-party actions seeking lost profits, personal injury or property damages from plaintiff due to a malfunction of the computer resulting from defendant's improper installation or design. The indemnity clause clearly covers those circumstances and permitted plaintiff to seek indemnity from defendant for the counsel fees incurred in defending such claims.

*Id.* at 494. *Hooper* refused to apply the *Breed, Abbott* exception, specifically noting its limited applicability: "*Breed, Abbott* did not signal any departure from settled rules." *Id.* at 493, 549 N.Y.S.2d 365, 548 N.E.2d 903. *Hooper* found the limited exception inapplicable to a case where "the potential existed for third-party actions ...." *Id.* at 494, 549 N.Y.S.2d 365, 548 N.E.2d 903. Here, the same "potential"

exists for Defendant and any indemnitee to seek indemnity against third-party claims.

In *Hooper*, there was no "unmistakably clear" language authorizing indemnity recovery of attorney's fees in intra-party suits by the plaintiff against the defendant for claims arising from the contract:

> The clause in this agreement does not contain language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant. On the contrary, it is typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim. It obligates defendant to "indemnify and hold harmless [plaintiff] * * * from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees" arising out of breach of warranty claims, the performance of any service to be performed, the installation, operation and maintenance of the computer system, infringement of patents, copyrights or trademarks and the like. All these subjects are susceptible to third-party claims for failures in the installation or operation of the system. None are exclusively or unequivocally referable to claims between the parties themselves or support an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract.

*Id.* The language in the *Hooper* contract "obligates defendant to 'indemnify and hold harmless [plaintiff] ... from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees' arising out of breach of warranty claims, the performance of any service to be performed ...." *Id.* at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903 (quoting from the indemnity agreement itself). "Nevertheless, the court concluded that none of these subjects are 'exclusively or unequivocally referable to claims between the parties themselves or support an infer-

ence that defendant promised to indemnify plaintiff for counsel fees in an action on the contract.'" *Bourne Co. v. MPL Communications, Inc.,* 751 F.Supp. 55, 57–58 (S.D.N.Y.1990) (quoting and citing *Hooper,* 74 N.Y.2d at 490 n. 1, 492, 549 N.Y.S.2d 365, 548 N.E.2d 903). *Hooper* requires an express and explicit provision for attorney's fees in an intra-party action arising from the contract, which will not be inferred by the court.

The indemnity provision in the Credit Agreement does not contain "unmistakably clear" language that indemnity applies to intra-party suits arising from a breach of the contract by the parties who are obligated to perform it. The language itself does not overcome the presumption against reading attorney's-fees coverage into the agreement. Defendant's counterclaim refers to sections two and four of the Credit Agreement (10.3(b)) to support its contention that the indemnity provision extends to "all" costs arising from the claims alleged in Plaintiffs' Complaint. Defendant's Counterclaim at 5, ¶ 4. Defendant also refers to section one. Defendant's Opposition at 3:25–4:19. Defendant argues that Plaintiffs' "indemnification obligations ... were to be all-encompassing ... [as can be seen from the fact that] only claims arising out of 'gross negligence or willful misconduct,' ... are excluded from the indemnity obligation." This begs the question.

As the court in Hooper noted, general language indemnifying "[a]ny breach" is not specific enough to allow the court to infer that the parties intended the indemnification of "counsel fees in an action on the contract." *Bourne,* 751 F.Supp. at 57–58 (quoting *Hooper,* 74 N.Y.2d at 490 n. 1, 549 N.Y.S.2d 365, 548 N.E.2d 903). Language providing indemnification for "action on the contract" must be expressly present.

The language here provides indemnity to any indemnitee for costs, losses, and fees of counsel, etc., "asserted against [i]ndemnitee arising out of, in connection with, or as a result of ... the performance by the parties hereto of their respective obligations hereunder ...." Wolf's Declaration, Exh. A at 71–72, § 10.3(b). This language includes reference to claims that arise out of, in connection with, or result from performance by the contracting parties of their contractual obligations, which arguably could include intra-party breach. The parties, however, expressly selected New York law to govern their contract. They are presumed to know New York law, and that express and specific language is required. When all the language of the indemnity provision is considered, it is not "exclusively or unequivocally referable to claims between the parties themselves or support[s] an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract." *Hooper*, 74 N.Y.2d at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903.

All four sections of the indemnity agreement may apply to third-party claims, not just intra party suits for breach of the Credit Agreement. Wolf's Declaration, Exh. A at 71–72 (§ 10(b)). Section one refers to claims arising from the performance of the agreement itself and could encompass intra-party claims arising from their performance under the Credit Agreement. Section two refers to claims arising from the Plaintiffs' use or proposed use of a loan or line of credit. Section three covers suits arising from the effect on third parties of the release of hazardous materials. Section four provides protection even when the indemnitee is not a party to the cause of action giving rise to the claim. Not one of these four sections exclusively describes intra-party suits. All four clauses of the indemnity agreement lack clear and unmistakable language that the indemnity provisions were intended to apply solely to intra-party suits.

Defendant also cites a Second Circuit decision, *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, as authority that "the language in [a] loan agreement ... [could be] sufficient to sustain [a] lender's claim." Defendant's Opposition at 7:11–14. Defendant claims that this ruling is "[s]imilar[ ]" to and supports the proposition that courts are "not limited to[ ] the indemnification provision in determining whether the parties intended to extend indemnification to intra-party litigation." *Id.* at 7:2–6; *see also* 894 F.2d 516 (2d. Cir.1990). *Towers* is "outdated" as precedent. *Hooper* is controlling law and "announce[d] that contractual attorneys' fees indemnification provisions do not alter the general rule that parties are responsible for their own litigation costs absent an 'unmistakably clear' statement to the contrary." *Bonnie*, 955 F.Supp. at 219–20 (quoting 74 N.Y.2d at 491–92, 549 N.Y.S.2d 365, 548 N.E.2d 903). The court also noted that *Towers* "was argued two months before *Hooper Assoc.*, was decided, and, ... 'it is quite likely that the [Second Circuit] was not apprised of *Hooper* [*Assoc.*]' when it rendered its decision." *Id.* at 220 (adopting plaintiff's temporal argument). The district court decided defendant's request for attorney's fees in *Towers* on May 8, 1989, over six months before *Hooper* was decided. *See Towers*, 894 F.2d at 521. This decision, uninformed by *Hooper*, was upheld by the Second Circuit, with no discussion of *Hooper* or indication the Court was aware of the New York Court of Appeal's recent decision. *Id.* at 525. No authority is cited that the earlier decision in *Towers* controls or limits *Hooper*.

A post-Hooper decision, *Bridgestone/Firestone*, acknowledges and discusses *Hooper*, and declines to rely on *Towers* as authority. "Under New York law, the

intent to provide for counsel fees as damages for breach of contract must be 'unmistakably clear' in the language of the contract." *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 20–21 (2d Cir.1996) (citing *Hooper*, 74 N.Y.2d at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903); *see also Bonnie & Co. Fashions*, 955 F.Supp. 203, 217. In *Bridgestone/Firestone,* the Court denied attorney's fees when it found an indemnity clause, even more expansive than the one in this case, did not support a right to intra-party attorney's fees for a breach of contract claim. The indemnity clause in *Bridgestone/Firestone* provided:

the [defendant] shall indemnify and save [plaintiff] harmless from any and all claims, demands or causes of action, any and all costs or expenses, including attorney fees, that may be asserted due or arising out of the [defendant's] collection activity or employee dishonesty deemed contrary to prevailing guidelines on accounts referred by [plaintiff] . . . .

*Bridgestone/Firestone,* 98 F.3d at 21. The Court found that "[t]his language is not an unmistakably clear statement that such damages were intended. The language may easily be read as limited to third party actions against [plaintiff] by, for example, persons from whom the [defendants] demanded money." *Id.* (citations omitted).

Given the "general rule" against extending indemnity, courts should not waive this rule without clear language of the parties' intention to do so. *Hooper,* 74 N.Y.2d at 491, 549 N.Y.S.2d 365, 548 N.E.2d 903. "[W]hen courts are confronted with attorneys' fees provisions which do not make 'unmistakably clear' the indemnification of the contractual parties, courts read the provisions to apply only to legal expenses incurred through litigation with non-contractual, or third, parties." *Bonnie & Co. Fashions,* 955 F.Supp. at 218 (applying *Hooper*). The cases following *Hooper* do not examine "intent" from the parties

"conduct," but rather find it, if at all, in the language of the contract. The language of the contract between Plaintiffs and Defendant is not alleged by Defendant to unmistakably provide for the indemnification of attorney's fees claims between the parties to the contract.

A motion to dismiss is appropriate to eliminate an invalid claim for first party attorney's fees under an indemnity claims governed by New York Law. *Canpartners Invs. IV, LLC v. Alliance Gaming Corp.,* 981 F.Supp. 820, 826–27 (S.D.N.Y.1997). Defendant's counterclaim does not allege such unmistakably clear language or exclusive intent. Plaintiffs' motion to dismiss Defendant's counterclaim is GRANTED WITH LEAVE TO AMEND.

## VI. *CONCLUSION*

Defendant/Counterclaimant has not alleged specific facts that take its claim for indemnity-based attorney's fees out of the general New York rule limiting such agreements. Taking all the allegations of material fact in the counter claim as true and construing them in the light most favorable to the Defendant, Defendant has not included assertions of contract language that demonstrate an unmistakably clear intent for recovery of intra-party attorney's fees from provisions that do not clearly apply to third-party claims. *Hooper* is controlling New York law. The *Breed, Abbott* exception, cited in *Promuto,* does not apply in this case. *Towers* does not consider *Hooper. Hooper* is controlling precedent and has been so recognized by a subsequent Second Circuit decision, *Bridgestone/Firestone.* There is no unmistakable statement in the indemnity agreement that Plaintiffs are liable for attorney's fees and costs for intra-party claims arising out of breach of the Credit Agreement. For these reasons:

Plaintiffs' Motion to Dismiss Defendant's Counterclaim Pursuant to Fed. R.Civ.P. 12(b)(6) is GRANTED WITH LEAVE TO AMEND;

Any amended counterclaim shall be filed within twenty (20) days following the date of service of this decision.

SO ORDERED.